This morning we have two cases scheduled to call argument. Two cases which have been submitted on the record. The first one is 2007, Bax 3085, Webb v. FEOP. The second one is 2007, Bax 3317, Dickerson v. DeVilliers. The first case we will hear on our line is 2007, 1272, Plus 800 Adept v. Murex Securities. Mr. Lee, you have 30 minutes to give your call sign. Yes, Your Honor. Thank you. Mr. Police Department, my name is Dwayne Lee and together with my partner, Lisa Curzolo, I represent the elements of Target and West. This morning's time committee, I would like to briefly address four issues. First, I would like to address the claims defraudment of the term assignment. A limitation that is in all of the assertive claims of the FFS. A limitation that we contend requires that assignments be made before a phone call is placed. And a limitation, if properly construed, which would exclude the Target's services and products from a fine of infringement. Second, the second issue I would like to address is the jury award of approximately $9 million, which is based upon revenues from products which were not a piece of infringement and to which there was no factual predicate for application on this entire market value rule. Third, I would like to address the District Court's refusal or declination to enter, just as a matter of law, on the tortious interference claim and to consider the issue of whether that claim was amputated, cut or devolved. And fourth, and very briefly, if time permits, I would like to address the unassertive claims of the Moore Schaefer Feds, approximately 167 of them, which were invalidated as a result of an argument made in close. Let's just believe there are a lot of connections in this case. I'm not sure I have them all straight. But let me ask right off that if you succeed on your first point, what is left of your second and third and fourth point? Your Honor, we succeed. We succeed on our first point. It was the rest of the second point which is standard. I would also suggest that as implications for the third point, the tortious interference claim, because a substantial portion of the evidence and particularly the arguments made at trial was, here is the number of patents. They cover real time. Here are the Moore Schaefer patents. Moore Schaefer should have known they covered real time. They, therefore, should have known they were invalid. Therefore, the commencement of litigating hundreds of Moore Schaefer patents was objectively baseless, and there's no claim to them at all. They are related. The last issue is independent, more so from the first three. And it simply goes to the question of when, as a result of the six-file prophecy, these parties have focused on two points, three points, I'm sorry, of two patents. Can a jury be asked with no evidence to adjudicate the validity of approximately 165 other patents? I thought the last point was also related to the first, in the sense that the validity arguments that you're making can, to some extent, but even from the plaintiff's point of view, it's practically not going to happen. The validity doesn't seem to fit the structure of the patent. That's correct, Your Honor. To be more precise about it, the last argument was going to focus only on the unassertive claims. And the argument that I was going to focus on is, in fact, the procedural argument of whether that's the truth. The jury could probably render a verdict on those claims. There is, as to the three claims that were actually adjudicated and found to be invalid, that they are for sure, and we have agreed on that basis, related to the question of whether a sign is properly inferred. So it does flow follow through all the way. As soon as we've digressed a little bit, I don't ask you to digress further, but before you sit down, we also need to talk about what the effect of the Wilkmanness issue would be, depending on how the first issue gets determined. And, Your Honor, let me do that. I'll turn to the first issue, but to frame it in terms of the Wilkmanness issue, this is a case in which the jury verdict was rendered in October 2006. The distinction on the judge being Jamal Wilkins was rendered in April of 2007. Seeking an objectively reckless standard was decided in an opinion issue in August of 2007. The claim construction issue I will now address is one that I think we would guess would have required under seeking, if it had been decided, a determination of no objective recklessness. Let me say why. The claim interpretation that I'm going to address in just a few minutes is one that is actually, that I'll probably address in a few minutes, is one in which, in fact, the party secured the grid, the court secured the grid, and it didn't change until the 19th day of trial. Pardon? Nothing wrong with that. Your Honor, in a truly analytical framework, this court has made it clear that the court can change claim construction at any time up until the time the jury turns. I think an issue, and it's not one that we have for you here, but an issue that the court may consider in other cases, at some point in time, the proceedings are so far down the road that there is prejudice that resolves at the moment in time when the claim is changed. But if we accept the proposition that the claim interpretation can claim any change at any point up until the time the jury turns, it still leads to the question, it goes near to Flaker's question, of whether you could be objectively reckless under seeking if there was a claim interpretation for the first and 18th day of trial which would have resulted in a claim of non-infringement. And that claim interpretation is the issue of assigning. Assigning is in all kinds of construction. Do you misquote claim 29? I have claim 29 here, Your Honor. I'll take claim 29. Well, I'll go to claim 29 in the appendix at page 414 of column 15 and look at the actual claim itself. I think it's accurately quoted in all of the key areas. So at column 15, line 26, Your Honor, there is all potential first parties. At column 15, line 33, there is assigning to the physical location of a potential first party a telephone number of a service location of a second party. That will receive calls. And, Your Honor, I think I have these answers to those unassertive claims. The first thing is the fact that there are cell phone claims doesn't change what the claims say in this case. And it is clear that the specification of commonplace with respect to cell phones that the determination of the physical location of the cell phone may be as follows. I can't say, Your Honor. Let me explain why. There is nothing. It's important to go back in time to the final date of this test, which is 1992. It's very early in the technology. The second point, Your Honor, is there is nothing that would preclude the claim as properly construed by our monarch to cell phones. A cell phone has an area code. It has seven other numbers. Generally, particularly back in 1992 and in the 1990s, it was issued from a location that had something to do with the area code. You could assign a physical location to that just as was required by the claim. The billing address or the location. If you get one today, you could have it in New York, you could have it 212 or 646. But it's a pretty darn good indication that the cell phone was purchased by someone who lived in that area. But the cell phone is not necessarily in that particular location, Your Honor. It's not, Your Honor, but if you look at the only two ports of it, let me say, let me back up this a little bit. You can take the claim as properly construed and give all of the words meaning. Potential, all potential, that will receive assignment. All of those words are the words that we focus on in the claim you're pointing out. And have them apply to someone who purchases a cell phone at a particular location. Your problem is that the classification is fairly economical that the location of the cell phone is determined by the physical location of the cell phone. Yeah, I think there are three answers to that. My description of the classification is correct. I think, Your Honor, if I focus on what you say is contemplating, the answer is yes. Is enabling? No. And, in fact, if you look at column six, line 59, column seven, line three, what they, there are only two portions of the specification that deal with the cell phones. The first is at column three, line six to 12. And what it says is it might apply or could apply to cellular devices if there are future technological advances. Then you get to column six, line 59, which is the only other place. And what it says is there may be developments in the future that would allow you to do it with cell phones. And then, critically, I would suggest if you go to line 66, in the event long-distance carriers can accommodate the ANI latitude and longitude concurrently, this invention can be employed. So that's why I answered the question, I hope, correctly. When you say contemplate, yes.  It has this to do, Your Honor, is we're focusing on claims, three claims that were not asserted. And the claim is that you should consider those three claims and consider them as broadly as construed by 800 to death. And they should illuminate the manner in which claims such as claim 29 should be interpreted. The fact that those claims are susceptible of an interpretation that's consistent with what we offer, which is you assign it a physical location, and that physical location doesn't render the claims inoperative. But if we're wrong, and if the claim would be rendered inoperative, that should, I would suggest, illuminate the claims construction, the claims construction inquiry.  Those unasserted claims inoperative and unable to give a greater breadth to a claimant's time and space has a narrow interpretation. And, Your Honor, I think one of the best ways to get at this is this. If the court considers what you define as intrinsic evidence, claim terms, the specification, and the file history, under 800 to death claim interpretation, the words all potential, potential, that will receive can be eliminated from the claim. If you take claim 29 and you just take those words out, it has the same meaning. If you read them in, and you read columns 1 and 2 of the specification, and then the five steps that are columns 5 and 6 of the specification, those words, all potential, that will receive, make good sense. This is particularly important, I would suggest, because this is a prosecution where the term, all potential first parties, was added at the end of a very long prosecution. Why was there no discussion of self-imposed claims?  So I think, Your Honor. Well, why can't there be a prosecution that's directed to the claim? Well, Your Honor, then the question becomes, what does claim 29, for instance, cover? Does it cover just landlines? Or does it cover, more broadly, cell phones? And to go back to the question Your Honor asked earlier, if there's no enabling disclosure for the present claims, you would be adopting a claim interpretation that would render the claim invalid. So a question would be, if the claim, claim 29, just to pick one, has to have the breadth, the 800 in depth CTS. And it does have to have that breadth, or they're going to accuse us of infringement. If you have to have that, and you interpret it broadly enough to cover real-time calculations, and therefore cell phones, then the fact that the specification is not enabling is relevant. And I realize this is frequently a last resort claim interpretation principle. But adopting a claim interpretation would render the claim invalid. At the end, it's not something that the court has been inclined to do. On the other hand, you could adopt a claim interpretation that we have proposed. And let me just say, not only is that claim interpretation consistent with those words. It's consistent with the specification. It's consistent with the last tense of the abstract, which was added at the very time that all central parties possessed. And if the court considers the specific portions of the file system, the distinguished fiduciary, they said as clearly as you could possibly say, here is a system that makes computations in real time. We don't do that. Ours is prehistoric. This is the situation. So why didn't you cover cell phones? Fiduciary could cover cell phones. It was very early on. It's really early on. Yeah, it's 1991. It was prior to 1992, finally. And I had no discussion of cell phones until then. Not that I can recall. Not that I can recall. Your Honor, let me see if I can simplify this discussion of cell phones. For me, anyway, because I'm a civil lawyer. I take it what you're arguing is that we need to interpret this patent-making language in the light of the actual invention. And what you're saying is he didn't invent the cell phone mechanism. He talked about it as something that might happen in the future. But that isn't really what he's inventing. Is that your argument? Yes. And what you're saying is we need to construe the language of the relevance of the assertive claims in the light of what we could understand as the actual invention. I take it that's basically the case that you're trying to make. That is the essence of our argument. The only thing I've got is the invention of the devil's patent as they described it in the cell. So it's not from a third party. Now, I'm just helping with one slightly different issue, which is you make the point that if we adopt your understanding of what assigning means, then you don't entrench. Correct. Why is that? Your Honor, because our system makes computations in real time, so it's not a pre-assignment. It has, today, a major advantage because we haven't taken a database egg and pre-assigned it to a database bin. And as Your Honor can imagine, on any given day, your telephone numbers, your phone numbers get added to the database. It will give the degree of flexibility that didn't exist before. Would your system accommodate cell phones? It could. It doesn't. But it could. You could make the technology that's developing today work with it. You know, the technology that's supposed to come sticks at the ramp, which isn't going to work with either one of the systems. But you could make it work with cell phones. I think that things around the ramps might move with that. Yeah. Yeah, I don't think it has anything to do with whether it's enabled or not. I think the precise tele-answer to your question is this. If the court can sit us, the argument is made in 800 against 3 that if our claim of perpetration is correct, there still is proof that we actually pre-assigned the number. Yes, this is what I thought. And Your Honor, I've gone through each of those. The record is luminous. I've gone through each of the places that are cited by 800 in the death. And very quickly, since I'm over my time, the cases are 5314, 5318, 5320, 5027, 14946 to 7, 13399, and 6265. Every single one of those citations, which are awkward cues for the proposition that we pre-assigned, demonstrate that we don't. They ask for proof of the contrary. So I think the precise answer to Your Honor's question is yes, our argument is that if you look at what the patentee said in the abstract specification of file history in the claims, this is the correct interpretation. And that correct interpretation can be applied to cell phones. Maybe without maximum sort of assistance, but it can be applied. And, Your Honor, you can go ahead and confirm. Go ahead. Yes. Or just using the area code. You could use, you know, when you buy a cell phone, you get an area code. You could use that as a starting point. Or you could use a search for it. The area code could be used to identify a lawsuit If you buy a cell phone and it comes with an area code, that could be used. Is it, so to say, optimal? No. Do they describe a way to enable it? No. I would support that the bottom line question is, should the court take a claim that may or may not be enabled, which there is approximately six lines in the specification, which could work with a cell phone that had the area code, and say, OK, because of that course of step, we will not credit the fact that all the embodiments are consistent with what we say, and all of the statements in the prior article, the statements in the prior article, are consistent with the interpretation of the law. I'm sorry. Yes. Yes. And I think that the fair characterization is this. If Your Honor considers the pages that are recycled and changes made, there's a very consistent objection. And the objection that's made, I think the claim interpretation, because finally it's offered, is actually susceptible to different interpretations. One would be ours. One would be the broader interpretation. That would be error in itself, particularly because in the broader interpretation, and to quote the argument said, that's how they were laid down. There is an objection made that is specifically made, not only to change, but also because it would now cover real time. And if I'm recalling the pages correctly, there is a cause for that, and the court will find. All systems require some form of calculation. Even a fixed database system, as described in the indictment. The question is, are you doing calculations through the assignments to a second location in real time? But the objection, though, is that language is, is not sentenced under the 11, you know, 11 times to the 10 times to not exclude calculations made during the telephone call. That's correct. Yes. Your Honor, that's why I say it's susceptible to two I would ask the court to consider, and let me just get to the precise place. If the court considers the arguments made at 2458 to 24531, this is where 800 to death closes by saying, this claim construction now covers calculations to do the assignments in real time. This has cut the length of the position as far as it's offered you during the trial. So, Your Honor is correct. You could have, you could take what Judge Whitley said, and it's susceptible of a narrow interpretation and a broader one. 800 to death closed and went to jury on the broader one. The fact that it's susceptible to two, and the jury was allowed to catch one of the two, is in and of itself very suspicious. But did you request an instruction that would have included calculations as to what the patient had to follow? At the very place where this policy occurred, Your Honor, you will see that we objected to that change in claim construction. Yes. But did you suggest an alternative? Yeah, the alternative was to leave it as it was without the addition of the sentence. Because if you left it as it was without the addition of the sentence, then it would not cover real time. And that's the argument that was made. And if the court considered changes where that change was made, would the district court judge actually say, quite plainly, I'm a little uncomfortable with patent cases in this case. If I don't make the change, plaintiff loses. They won't get to put on their case. Well, and I understand how someone who was newer to patent law would perhaps feel a little uncomfortable with that. But that's what happens with claim construction. The court frequently decides claim construction as an issue of law. And one party wins or loses. But if you take the claim construction as it existed, up until that 19th day, that first sentence would do it. And I think just like the confirmation is, if I could draw the court's attention to page 593.4 of the record appendix. This is page under a death. In this case, in the summary of judgment proceedings, talking about the five-step process, and I quote, the assignment of the step must occur before the call comes into effect. That was not just our position. That was their position. The court adopted a claim construction consistent with it. It was the right claim construction. And it continued to be until the 19th day. An additional sentence was added about calculations that could occur. Should I follow that? If you say they agreed up until that 19th day, wouldn't that foreclose their case? I don't understand what you're saying. They had made representations that our claim construction would be accurate. When you got to the 19th day, they had made representations that your claim construction would be accurate? I'll be more precise. I'm not really trying to pin them down about whether they actually made that. Assuming they agreed that your original claim construction was correct, wouldn't that have foreclosed their ability to win over the facts of the case? Yes, it should have. But I think, Your Honor, what I'm saying is to be quite a bit more precise. They described the claims in a way that is consistent with our claim interpretation. Then we got into the trial. And the question became, what kind of calculations could occur during the process? And would those calculations satisfy the assignment of the case? And that's what occurred in this trial. And I think what Judge Harris referred to is the addition of one sentence. And the addition of that one sentence is critical, we suggest, because that is the sentence that allowed 800 to death today. See? The light has been cut out from under. OK? Thank you. Thank you. Another story you're probably telling, Mr. Wigg. Thank you. And we'll have you at the same point in time when you turn it over to me. Thank you, Your Honor. Thank you. Of course. Good to see you. Steve Milgram. Actually, you can go. Steve Milgram on behalf of 800 to death. Let me correct a couple of things first. The word free assignment does not appear in the patent. Counsel used free assignment. The word billing address does not appear in either of the medal patents. You won't find it. Counsel has misrepresented Judge Fawcett's mark. Let me take a look at it. I don't think it's useful for a few people. I'm saying intentionally, I'm saying. But what he has said is totally inconsistent with what Judge Fawcett ruled. If you look at page 1926 and following, the appendix, you'll see she wrote a very detailed opinion. She adopted our claim construction. And that opinion unequivocally states, Your Honor, which counsel's letter to the Court of Appeals otherwise, that the assignment staff does not exclude online calculations. That phrase comes from it. I don't think the jury was instructed. Well, the jury was instructed consistent with the earlier markment order. It is true that Judge Fawcett left. Let's go. The sequence was, the markment order was fairly consistent with the instruction in that she said online calculations are not excluded. Don't forget about the development. When the jury was ultimately charged, do you agree that they were charged with a defined intention even though calculations were made after the call was initiated? Calculations of physical location. The jury was instructed that the assignment staff does not exclude online calculations. And Judge Fawcett was very careful about how she phrased that. She simply said, I'm not excluding online calculations from the step of the assignment. Let me explain why she was correct. Before you do, help me at least understand what is understood by online calculations. What are you talking about? I'm glad you asked that. I want to urge the court, don't look at any other part of the record after this oral argument. Go back and look at the Harvest User's Manual at page 13375. Speak up, Counselor. Yes, sir. Harvest User's Manual, page 13375. Very, very important. It undermines what you're hearing from counsel today because what that shows is that a client uses a target tool to assign, before the call, every location. It's called the Client-Specific Mapping Requirements at page 13404. It shows how you point and click a radial territory or a polygon, and you encompass within that territory all of the caller location phone numbers within that territory ahead of time. But that sounds more like you're arguing that they infringed based on their own construction. The argument that I'm trying to get to is why does it help you to have something that says the patents do not exclude calculations? What kind of calculations are you talking about? Let's look at Claim 29 specifically. Let me answer that question in that context. There are two limitations. The assignment staff in Claim 29, which I'll quote only in part, assigning to the physical location of said potential parties a telephone number of a service location of a second party that will receive calls looking forward to a future event. Now, the last element of that claim is directly grappling said telephone call to a service location of a second party assigned, past tense, to said originating telephone number of the first party by said staff of assignment. Where in that claim is there any requirement of a particular calculation or a particular algorithm? Is this patent infringed by making online calculations? That is my point. Well, yes or no. Now, you can just use a yes or no, and then you can explain. Online calculation is not claimed in Claim 29. The claim doesn't have a limitation. It's not infringed by online calculation. If you practice the claim, you infringe. But that answers my question. Is the answer infringed by an online calculation? What I'm trying to say is online calculations are simply the route of instructions necessary for the particular database that is used in the application. That answers my question. Claim 29 doesn't. That's my question. Is it answerable? No, it isn't the way you put it, Your Honor. And this is why. Claim 29, all the assigning limitations do not have a limitation on calculations. Counsel's attempt to import into the claim a limitation that is not there. I don't understand how you cannot answer my question. The whole case, as it reads here, is whether the patent is infringed by online calculations or not. Is it your position that making online calculations infringes the patent? It is our position that you can't practice a patent without some form of calculation. Therefore, when the caller comes online and the calculation is used to retrieve an already assigned dealer record that's already been mapped, that is infringement. But the calculation itself is not a limitation in the claim. At the NSA, counsel is attempting to import a limitation that is not there. Is the patent infringed? If the determination of location is made online. If the determination of location is made online and there has been no assignment beforehand, then you have no way to route the call. That is precisely my point. You must have an assignment before the call in order to locate it. Let's assume that the assignment before the call is initiated by having various kinds of tables built into some platform or some computer system. And then the initiating call comes in. To the platform. To the platform. Some calculation has to be done. What calculation? Those are the kind of things. You may have been able to persuade the jury that a statement that the patents do not exclude calculations is a meaningful phrase. But it isn't. Because the question is whether it includes calculations. And they're trying to understand whether it does. And I can answer a very direct question. Is it that it is? If the call includes calculations, does it infringe the federal patent? My question is, it does infringe. If those calculations are used to retrieve a due or a record already mapped out in advance, already assigned, because it's the assigning limitation that we're talking about, there is no online calculation limitation at least in this statute. Then what was the judge talking about when she said, at your instance, well, it doesn't exclude calculations. Because what calculation is it she's looking for? Because throughout the trial, from day one, from opening statement forward, Tarry's took a position that Mr. Neville had, in the prosecution of the case, disclaimed any use of online calculations. Now, that absolutely was not what Judge Fossett ruled. And yet, he persisted throughout the trial. And Judge Fossett agreed with our position, because counsel was essentially arguing with the court's claim construction, that the phrase from her previous order needed to be added to the jury instruction. But Mr. Neville, when she uniquely made the definition of claim construction, no such real patent confirmation was made. Do you agree to the assignment that she made in the original Markham order? I think both sides agree that this part of the Markham instruction is that an assignment is a designation made prior to the call to the public. And we certainly agree to that, because that assignment must be made. That's why I say, please look at the user's manual, because they do that. They assign. The patent doesn't have a limitation directed to any particular form of calculation. Whatever it is, they assign the dealer telephone to the location of the caller, precisely as it was. In advance. In advance. It's all mapped. It's all mapped. That's why it's called a client mapping requirement. And all that happens is the caller picks up the phone and the system checks the tables and connects the call. Exactly, Your Honor. That will return the same phone number on the same condition. Let's say you call every time at 9 o'clock. It will always return that dealer. If it's closed, maybe it'll return a different dealer. But the way the tables are constructed, it will always return the same value, because they pick the client dealer for that location of the caller in advance. That's the only way their system works. It literally infringes the assigned limitation. The whole notion about calculations, I suggest to you, is an effort to import a limitation. Is there a chance of a marked determination of any other threat to not include in the real-time calculations? The judge didn't rule that real-time calculations were not included. The judge ruled specifically in her order, Your Honor, she ruled that real-time calculations were not excluded. Those in the jury. That's also in the judge's order. I got a little excited about counsel's representation. If you simply look at the judge's order, page 1926 of the appendix and follow it, there's a very detailed order where she says, well, there's no disclaimer of real-time calculations in this file of history. And whatever is in this file of history is ambiguous at best. And moreover, what she said is, Neville's statements are directed to the staff of the signing. And that's precisely what I, perhaps an article I'm trying to convey. It's because you're saying here that what's really involved is not a plain construction issue, but an issue of practice of whether under the joint committee for plain construction, there was an infringement. In other words, you're saying that they assign the numbers before the call is made. They do. All they do is, you're saying that this doesn't depend on construing the claims to cover the assignment of the numbers with the location after the call is made. Is that correct? Well, in this sense, if you don't know where the destination is, how do you assign it when the call is on the line? No, no, no, no, no. No, wait, wait. Let me follow you on this one. You're shifting the argument of Judge Dykstra, I think, and Steve, and Mr. Jones, and now a couple of me. Are you arguing that the way progress works is to infringe the metal patent? Yes. Even if the metal patent is understood as was first interpreted under the plain construction before the additional sentence was added. Is that your argument? Yeah, that sentence was not added. It was in the original order, and that's where I am.  Before the second sentence, the however sentence was added, the original assigning was interpreted to mean a designation made prior to the telephone call of the first part. Right? Right. Are you arguing now that that's fine because TARGIS' accused system infringed the metal patent at that point? Is that what you're saying? And what I'm saying is there is no claim limitation as to what happens online. That is the very important point, and I'm sorry to keep belaboring, but it's very important that you understand. There is no limitation in this patent as to what procedures you use to execute an assignment that you've already made. So let me see if I understand. You're saying the infringement occurs because of an assignment of a number that occurs before the call date. But yes, you basically don't care what happens after the call date. But can you say that the patent doesn't care after what happens after the call date? The patent doesn't have a limitation, and this is why. Because it's drawn to any foreign arrest. No, wait. Wait. You're saying that the patent is infringed because the assignment of numbers is to be made before the call date. Correct. That's what I'm saying. Is that all you're saying? No. I'm saying that something has to occur online, but that is not claimed. And the reason it's not claimed is because of it. So that doesn't have anything to do with the infringement. Your theory is that the infringement occurs because they assigned numbers before the call date. And they're retrieving that assigned number. Right, after the call date. Correct. And that's the only way you're armed. Ask yourself this. How does Pardis get the correct dealer as opposed to an incorrect dealer? The only way they can get the correct dealer in line is to have assigned it, mapped it in advance. When the call comes to the platform, there has to be a process. Some algorithmic process to locate the record of the assigned, if you will, dealer. They have to do that. The patent doesn't place any limitations on how you accomplish that. Precisely why is because Mr. Nettle discloses a preferred telephone to telephone number table. He discloses a relational database. He discloses a hierarchical database. And because he doesn't attempt to limit the number of tables or the form of the database, he necessarily doesn't attempt to limit the algorithms that would be used to make that implementation. In fact, I would urge you to look at Pardis. Well, let's start with the claim from Claim 29. It's items that if the allocations and items we want to do coordinates and physical locations all protect the first premise. That's the first step, isn't it? The allocation. Yes, sir. The first party. Yes. That's a graph. Yeah, that's a geographic layer. And then the assigned step comes up with the physical location of the potential first parties that telephone number. So you already have a physical location of the first re-entry telephone. And you match that up with a second telephone. In the sense that you already have the last one for it. So all potential callers. Remember that Neville assigned that one coordinate to every potential caller, even those that are unknown. Then he determines the client's criteria for defining the boundaries, just like Pardis does. It's a big data. What is the second step? The second step is defining the boundaries. What is the area that you want? What is your service area? That's what you ask the client. And when you know what the client's service area is, then you are correlating, to use the word Mr. Neville uses in the prosecution and also in some of the claims, you are correlating the location of the caller and the location of the dealer. And at column 10, lines 4 through 10, Mr. Neville exposes a visual representation of that. I think it's somewhat useful. He says, when the advertiser supplies a designated response zone, that zone is like a transparent layer to the base map containing the phone numbers. So you have a map of phone numbers. And this is precisely how both parties do it. It says they have a computer that has a little box for every phone number. And you have a territory superimposed on that area. We don't do that until the caller. Oh, no. You do that before. Your man may not. If you look at your user's manual, which is why I say it's so very important, what they say is the same thing Neville does. You draw a radius on a map around the location where you want those phone numbers to go. Or you do a polygon, literally a polygon on a map. And every phone number, including those that are unknown, every phone number of a location within that area will be assigned and is assigned automatically before the call. Before the call. That's exactly what I mean. So you agree then that now, by and large, we bring across pieces that you disclaim the coverage of an assignment that takes place after the call is requested. We didn't disclaim calculations. We said that we do our assignments in a number that we do after the call gets requested. You disclaim that. You agree with it. I resist the term disclaimer because it's the plain language of the claim would require that. I don't understand what you're arguing. You can argue whatever you want, but you can't be unclear about it. I'm trying to be clear. I'm trying to be clear. I'm going to say it again. Claim 29, as an example, does not have a set, what was disclaimed, what was given up during the prosecution. Did you give up during the prosecution an assignment of a number to the physical location that takes place after the call was made? The only context in which I can answer that is in the Finucane context. In the Finucane pattern, at column 11, you don't have to use this. I can answer your question with respect to your honor. I have to answer it this way. And that is, in the Finucane pattern, column 11, there is a random selection of dealer territories. Now, that would be an example of a truly on-the-call, on-the-fly, if you will, selection. Mr. Nettle says, well, I don't do that. So that's the only point in which there would be a disclaimer is when he's saying, in the context of Finucane, I don't do that type of calculation because I'm correlating the caller and the dealer location in advance, and I'm building the tables accordingly so that when the call comes in, I'm able to write precisely, to route precisely down to the street level. Mr. Nettle, you just touched on something that I'm puzzled about. This system would work the same way or differently if we're talking about picking one of the 11 Starbucks with a three mile radius of foot support. If I call up 1-800-STARBUCKS, and I want to ask a question hypothetically, the place is a lot more hypothetical. Yes. Does your system work in such a way that it would identify the street number precisely? Can you contrast that, for example, either that or the country. If I want to call Loews, Lumber, they would pick one in the eastern, and they'd also look at that. That would suggest that they would be quite closer to the machine, presumably, with time. But that's an easy thing. But they could have a circle 100 miles around the eastern Loews. And now we're going to have to deal with the other neighborhood. So it seems to me there's two very different problems. Are you saying that they work exactly the same way? In the Nettle pattern, you have street level accuracy because you have that one coordinates of the street You can have a larger area, of course, like the Zip 4 centroid, would be the one way to show us in the Nettle pattern. And then I'm using lat and long. Well, you're still using lat and long. You're saying, let's define it streetly by latitude and longitude coordinates. Now it's found the center, that's the word centroid, of that location. And that will be the location of all the callers encompassed within that Zip 4 centroid. And both Nettle and Targis have that level of accuracy. The reason they do is because Targis literally infringes. But your setup is one in which all of that is done in advance. Is that right? It is all done in advance in the sense that we When I pick up my phone, there's no calculations to be done. There's only a hookup and then a connection. All right, let's talk about the term calculation. The term calculation, your honor, a calculation can be a series of table lookups to locate a record. And the evidence in the record, which we decided in our brief, that may involve as many as 20 steps by the computer to locate that record. So a lookup is a calculation. So a lookup is a calculation. And so is a distance calculation. If you've already worked out in advance your radius, and you've already assigned every phone number in that radius, you can say you're doing a distance calculation online, but you're not. You are retrieving a record that you've assigned in advance. That is a calculation. So the point polygon calculation, the so-called spatial calculation, point polygon calculation is simply retrieving a record that's already been mapped. That's the only way TARGIS is able to guarantee a franchise territory will receive only and precisely the calls within that territory. How can it do that on the fly? It has to map that out. OK, so let me ask the question. The sole issue, according to you, for us to decide on this is whether TARGIS engages in this assignment before the call is made. Well, that's the only issue on the assignment argument. And they do. What we believe is we have proof that they do assign before the call. Because all that's happening in the computer, I would urge you to look at the testimony of our expert on this, most of which is an underbuddy. And there's a very little cross-examination about this point. He describes how they build the tables in advance. They map out the location of the caller's location of the dealer. And they use an algorithm only to retrieve a record that will always, mathematically certain, unlike candy canes, will always be a record. That's still a calculation. It's a calculation. And calculation is neither displaying in the patent nor limited in any claim in the patent. And I suggest to you, none of the assigned limitations in the patent is there a claim with respect to calculation. Why is that important? Because Mr. Neville's patent was directed to all forms of databases. So it leaves it up to one of ordinary skill to select the procedures online that one would use for that implementation. Mr. Neville also discussed this. But doesn't it also have to be pre-assigned to telephone numbers? My telephone number would already be pre-assigned within the system by rotation. If your phone number is up, it's not. But only if your phone number is not. Well, we have a telephone number from my home. And it's a 202 number. That number is already located within the database. Yes. And in Fardis's. And in Fardis's. Where is it in Fardis's? Fardis has a master table. Fardis has a master table of 10-digit phone numbers. It also has a default. If the number is not in the master table of 10-digit phone numbers, it uses, just like Neville does, a default location. Theirs is a little bit different than Neville. Their default location is they assume that the central office switch within Exchange is the location of the caller. Now, that's operating in advance. Is that a service location number or a default? I'm talking about the caller. Let's suppose somebody is calling from a landline. They just moved in. And for whatever reason, Fardis doesn't have that function. What do you do with that caller? Well, Fardis has a default assigned in advance in that database that says, OK, we will assume that the default location within the Exchange and using the lat-long coordinates of the switch is the location of the caller. And we will then? So it's used to see it as D-A-N-X-X. Correct. That's the lat-long of the location. And Mr. Neville's slogan is predominance. Predominance is a feature of Neville. So that enables both parties to have all potential callers. That's exactly what Fardis does. So Fardis has all potential callers by 10 digits for a default. It has lat-long coordinates of those callers. So now you can have all the choices and refinement of the pattern. It's not your difference. It's between Mr. Lee. It's not a difference over claim construction. I understand what you're saying. It's a difference about a fact. It's a difference about whether targets pre-assign the numbers before the call is made. Right? Yes, in part. Yes. Well, what in part not? Well, because I suggest, Your Honor, that he is attempting to import a limitation that does not exist. And what he wants to do is he wants to import a limitation that says, oh, you can only do look-ups, or you can only do x or y. And his position is very consistent. On one hand, he said, you can't do any calculations. Well, they knew that wouldn't work. Even their expert wouldn't support that. Then they said, well, you can do anything but spatial calculations. And in the reply group in this court, they're now taking the position that we're limited to a look-up. Limited to a look-up. Nothing else. What you're saying is that the patent doesn't address that question. And therefore, it's not true. Correct. Well, it doesn't address it. It addresses it in this sense. The NETL patent repeatedly discloses. You find out the format. Consider, for example, column 12 of the NETL, of the 111 patent. It says, you find the format that the LVC wishes to receive the routing information. You deliver the phone number and the downline in the desired format. And then you submit direct routing instructions. And then you submit what other additional direct routing instructions. Now, the evidence clause, one of ordinary skill, would understand that those are the stored procedures necessary for the implementation of the database. Mr. Milgrove, why don't you just finish your talk. I'm worried it's going to be a lot more time than you initially intended. Go ahead and finish up. One second, sir. We would suggest Judge Box's opinion very early. Make these points. And she correctly shows why there is no disclaimer of long line calculations. And there is no limitation for long line calculations. Curtis's entire position lost the trial because the jury found that they infringed consistently with a valid instruction. And therefore, there's no way out of this dispute. That's a full paragraph. Mr. Milgrove, do you have a question? I do. I have four points to make. Presumably, one of them will be to address their intention that this dispute is a factual issue and that you, as part of the pre-explanatory process, should correct it. The answer is, that's not what the record says. All the records, citations, the answer is that's one of the four. That's not what the record says. That's not what the proof is. And there's nothing to sustain that position. In fact, Your Honor, in the portion policy, targets user manual, they cite, Your Honor, the court continues to state 13399. Which volume is that? I'm simply not sure, Your Honor. But it's 13399. I actually can't say it myself. But the user manual also doesn't say any volumes, does it? We apologize for the length of attendance. About 5% of it is what we cited in our brief.  13399 says that in targeted systems, the service location telephone numbers are, and I quote, determined on the fly with these telephone numbers. And I think I can sort through this often, Your Honor, to the court here. For sure, you're going to have a database of telephone numbers and users. For sure, you're going to have a database of locations. The difference between the two is, it's not just assigning in the abstract. It's assigning a telephone number of a service location. So take this example. When you call from the districts, you're assigned to one of the 12. In our system, you are not. There are possibly, you could be assigned to any one of the 12. And one of the advances that our system makes is, if I were to take 12 piece calls within the district, you can put criteria in that says, route my call to one of Nate's delivery, to a domino's place of Nate's delivery, or a tiki shop of Nate's delivery, and you'd be routed to a different telephone number. So what counsel did, that doesn't need to be done in advance, because they know in advance who delivers. You could do it in advance, and if you did it in advance, you might be all within the scope of the claim. But we don't do it in advance. And it's that flexibility. It allows you whatever flexibility you have to do some further infringement. Maybe if you're able to keep things to the flexibility of your system, that would never have happened in the past. But that seems to me not particularly pertinent. The question is, whether you can capture also what would never have happened in the past. And the answer is, they say, yes, you are, because you are assigned a physical location before the call. And the answer is, your honor, we're not. And to give you an idea, the portion that they refer your honor to in the appendix, for instance, are the testimony of their own expert who said in case 5027, the target system, quote, does some type of online calculation to choose the appropriate one once the call is made. What does that mean? That means, your honor, that when your call comes in and there are 12 different possible locations, rather than having you assigned to one, to number two, automatically, which is what's disclosed in the spec, our system would allow you to, depending on the parameters you put in, pick one of the 12. So you might pick the one that's closest. You might pick the one that has a place to sit down. You might pick the one that has internet service. And then our system says, OK, for those parameters, you can route it to a different one. And just like that's why I included your question, it does matter, because we are not pre-assigning for a reason. The flexibility comes from not pre-assigning. Does that mean you're going to keep changing the criteria? Is that what you're saying? It allows the database folks to change their criteria, yes. And that's one of the reasons that the system doesn't pre-assign. But it seems to me that doesn't necessarily preclude infringement. If you have a situation which you pre-assign to another physical location, but when the call is made, the change is to be made in the assignment because of various parameters. One location is busy. Another one is not. One provides the kind of delivery that they want, but the other one doesn't. It seems to me that that doesn't preclude infringement, that you have that kind of flexibility to change the assignment after the call is made. The question is whether there is an assignment to a physical location before the call, even if it may be changed after. Your Honor, the best I can do is refer you to the portion of the appendix I cited, Your Honor, that doesn't occur in our system. You're saying that the assignments under the care of the court are possible additional calculations. Right. And let me go back. That covers the second and third case. There is a difference. Is there in the target system, is there an assignment that is placed before the call is made? Is the assignment to a physical location? If you're assigning to a second, to a physical location, of one of the starts, no. And that's because of the way you define the term assignment, which gets us back to the claim of the structure problem. Yes. And yes, Mr. Clayton, what's key is, it's not just assigning in the abstract, it's assigning a telephone number of a service location of a second party. So it gets back to the question of, do we assign the service location of a second party in our system before the call comes in? And the answer to that is no. If you substitute the word A before the word B, in other words, if you don't assign A to the location before the call comes in. That's right. We wait until the call comes in. And that, if that answers the question, that goes to the question of these calculations when they've been in the final stream. If they were very careful, they referred to the different type of calculations. And at 8572, if I could just quote briefly, they say, the prior art has a computer that performs point of origin to point of termination calculations while the caller is on the line. Point of origin is just Clayton. Point of termination is with Starbucks. Applicants, direct routing telephone systems, perform all such calculations prior to the call, even being made. And in fact, prior to delivery of the database to the long distance carrier. So they have distinguished a system. What are you reading from this? This is their statement distinguishing the prior art from the prosecution history in 8572. And they made the same statement in 8626 where they say, and this is a quote, the present invention eliminates the need to perform online calculations to determine the appropriate termination. Now, all that was given to the jury. And there's one small problem with their position, which is he's got a big jury verdict against him. We do have a big jury verdict against him. How could all this just happen? Well, you know, Your Honor, there are a series of events that occurred. And I'm not sure. I wasn't there. Counsel was. But I think if Your Honor considers the portion of the transcript where the judge decides to add this portion of the plaintiff's presentation that we're focusing on, you will see that she says, I'm just uncomfortable here. I'm not sure what the right thing to do is. I'm going to adopt the interpretation of that subpoena to prove their case. And that's what they did. Because the question that Judge Geithas counseled at the outset of the argument, they actually explicitly answered. The question, the sole question of the last sentence that Judge Garrison referred me to earlier, this is what they said to the jury. And that's why the question is, I think, broader than just could we search the record and find one sentence that might support infringement under a claim interpretation. I think if you got there and then you balanced it against what was said to the jury, we would at least get a new trial. Because here's what they said that explicitly answers your question. Now, this is at 2452. Now, the court has instructed you, because the defendant has claimed that the patent, the never patent, does not disclose online calculations or calculations made while the person is on the phone. They target the contemplative test. Well, they told you that and told the judge. The judge instructed you. It says in page six of your jury instruction that the definition of the timing is said when they read the second sentence. Folks, they're going to come up and have some sort of explanation for that. But that's just tucked their letter right out in front of them. So this is a suggestion. But that's completely inapplicable. I mean, it can't be achieved without calculations. But your honor, there are some kinds of calculations that are made after the call is made, which everybody apparently does. The question is whether you pre-assign the numbers according to the claim before the call is made, regardless of what you do after the call is made. And I agree. And that's what is described in the prosecution history. That's what they say is different. And that's what the proof demonstrates. We do not have the truth. I was trying to answer your honor's question of is just the narrow question, is there some proof that will indicate it? Is there some evidence, even if it's unpredicted, that would demonstrate that we are at risk pre-assigning the telephone number? The answer, I guess, is no. The best I could do is refer it to the record setter. But if your honor considers the arguments made in the entire case, they weren't arguing anything. They were arguing that the target setter would assign a telephone number after the call comes in until you suspect. That's, your honor, why the fight was about claim construction on the 19th day of trial. It wasn't a coincidence. Mr. Lee, one final question. I don't know if you want to do it. Your honor, I have actually nothing further. And that will be my final question. Thank you. Thank you.